Dear Ms. Parrish and Mr. Nikolits:
In separate requests, you have asked this office substantially the following question:
How will the transfer of certain property from Palm Beach County to Broward County pursuant to Chapter 2007-222, Laws of Florida, affect the assessment, administration, collection, and distribution of ad valorem taxes on such property?
In sum:
Absent legislative direction otherwise, the assessment of real property by Palm Beach County on January 1 controls the subsequent administration, collection, and distribution of ad valorem taxes collected for the tax year by Palm Beach County. Any proration or division of taxes between Palm Beach County and Broward County on such property should be resolved by the counties' governing bodies.
Pursuant to Chapter 2007-222, Laws of Florida, the boundaries of Broward County and Palm Beach County will change due to the transfer of approximately 1,949 acres, known as "the Wedge" from Palm Beach County to Broward County.[1] The transfer will be effective upon the latter of the date a final order is issued by the Florida Department of Community Affairs or the date of a final order of the Administration Commission, or the date on which the roadway rights-of-way designated in the act are abandoned by Palm Beach County and all appeal periods have expired (predicted to occur in August 2009).[2] In addition to the change in boundaries, the act provides:
"4. All land use and zoning designation applicable to the lands subject to this act shall continue in effect until changed by the entity or entities with jurisdiction over those lands subsequent to the effective date of this act. All development orders, permits, and licenses in existence on the effective date of this act shall remain in effect and be permitted to continue in accordance with their terms, notwithstanding that the lands formerly in Palm Beach County are now a part of Broward County.
5. All public roads and the public rights-of-way associated therewith, lying within the lands transferred from Palm Beach County to Broward County by this act, are transferred from Palm Beach County's jurisdiction to the jurisdiction of Broward County, except that those public roads and rights-of-way within the lands annexed by the City of Parkland will be transferred to the jurisdiction of that municipality.
6. On the effective date of this act, Broward County shall be responsible for and embodied with all powers granted pursuant to the State Constitution, Florida Statutes, and Broward County Charter over the territory transferred to Broward County under s. 7.06, Florida Statutes, as amended by this act.
7. On the effective date of this act, the City of Parkland shall be responsible for and embodied with all municipal powers granted in chapter 166, Florida Statutes, and as otherwise provided by law, over territory annexed, as described in section 3.
8. Nothing in this act shall be construed to affect or abrogate the rights of parties to any contracts, which contracts are in effect prior to the effective date of this act.
9. For the purpose of this act, the procedures set forth in chapters 96-542 and 99-447, Laws of Florida, are hereby superseded.
10. Palm Beach County and Broward County shall be responsible for the public debt relating to the transferred property as required by s. 1, Art. VIII of the State Constitution. These counties shall execute an interlocal agreement no later than September 30, 2007, agreeing to the payment or apportionment of any such debt."[3]
Thus, while the legislative history of the act reflects, that "Palm Beach County will lose any revenues associated with taxes and assessments paid by the property transferred to Broward County, while Broward County will gain any such revenues[,]"[4] this does not appear to relate to any proration of the taxes for the current tax year, nor is there direction in the legislation as to how the duties associated with the assessment and collection of such taxes for the Wedge property will be affected.
Section 192.011, requires the property appraiser to assess all property located within the county. Section 192.042(1), Florida Statues, provides that real property shall be assessed on January 1 of each year. There are other procedural steps that are in the process of being or have already been taken regarding certification of the tax roll and extension of the roll after findings by the value adjustment board have been considered.[5]
These steps have been taken by the Palm Beach Property Appraiser and absent legislative direction to the contrary would control the assessment and taxation of property located within Palm Beach County on January 1. As this office noted in Attorney General Opinion 74-120, the late effective date of the incorporation, of a city in that instance, created a danger of failing to comply with essential statutory procedures for ad valorem tax assessment and collection.[6] In this instance, Palm Beach County has carried out the assessment of the property and has performed substantially all of the steps in extending the tax rolls. There does not appear to be any way in which the Broward County Property Appraiser could fulfill the assessment requirements and deadlines for the 2009 tax year for the Wedge property such that the levy and collection of taxes could be made by Broward County.
Inasmuch as the property known as the Wedge was located in Palm Beach County on January 1, 2009, and was properly assessed on the tax rolls by the Palm Beach County Property Appraiser, it is my opinion that absent legislative direction to the contrary, the collection and distribution of ad valorem taxes should be performed by Palm Beach County. Any proration or division of taxes between Palm Beach County and Broward County on such property should be resolved by the counties' governing bodies.
Sincerely,
 Bill McCollum Attorney General
BM/tals
[1] House of Representatives Staff Analysis, CS/HB 1315, April 13, 2007. The bill also annexes a portion of the transferred property (approximately 470 acres) into the City of Parkland.
[2] Section 12, Ch. 2007-222, Laws of Fla.
[3] Sections 4 — 10, Ch. 2007-222, Laws of Fla.
[4] House of Representatives Staff Analysis, CS/HB 1315, April 13, 2007.
[5] See ss. 193.023, 193.122, 194.032, and 200.065, Fla. Stat.
[6] While the conclusion in Op. Att'y Gen. Fla. 74-120 (1974) and subsequently issued Op. Att'y Gen. Fla. 80-33 (1980) recognized the ability of a municipality to impose taxes on property annexed after January 1, there are statutory provisions in Chapter 171, Florida Statutes, that specifically authorize such action which do not address property added to a county after January 1 of the tax year.